UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:12-CV-P97-M

**STERLING RENEVA RIVERS**                                                                 **PLAINTIFF**

v.

**JASON WOOSLEY et al.**                                                                       **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff, Sterling Reneva Rivers, filed a *pro se*, *in forma pauperis* complaint (DN 1 and 5).  On initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court will dismiss the complaint in part and allow it to proceed in part.

## I.

Plaintiff is a pretrial detainee at the Grayson County Detention Center (GCDC).  He sues in their individual and official capacities the following GCDC employees: Chief Deputy Jason Woosley; Jailer Darwin Dennison; Programs Director Gail H. Basham; law library legal assistant Morris Basham; and Deputy Mike Langdon.  He also sues GCDC.

Plaintiff alleges that on the evening of August 14, 2012, he was refused permission to go to the Ramadan service by a deputy, who informed him that he had received an e-mail from Defendant Gail Basham that she was taking Plaintiff off the list.  Plaintiff also alleges that on August 15, 2012, he missed two meals because he was asleep when the trays of food were brought.

Plaintiff further alleges that he is engaged in three civil suits.  He states that on July 24, 2012, he went to the library and:

> began asking Mrs. Basham if she could give me advice and/or

> accommodate my legal needs to relieve the legal burdens off my mind and shoulders.  She told me that GCDC don't do free calls.  I asked if she could help me send legal documents to the court as a means of legal assistance.  She told me plainly, 'No.'  Mrs. Basham didn't and wouldn't give me any intelligence on how to approach, nor handle the problem.

He states that after leaving the library he sent out a commissary request, to which he received a reply that if he sends his papers with an address they will mail them out.  He states, "I don't know how long Mrs. Basham has been working here . . . but for her to be the Programs Director, I'm sure that she knew that it existed with commissary, that they would accommodate me with legal assistances of mailing legal papers to the court."  He also states that he was told by Defendant Woosley to have his attorney or his family handle his legal activity and that he was denied free copies and free phone calls.

The complaint describes in some detail the events of August 6, 2012, while Plaintiff was in the law library.  He states that Gail Basham told him he needed to have copies and notarizations done before 3:00 pm but that when he tried to comply she was busy talking on the phone.  According to the complaint, Gail Basham did notarize the papers but told Plaintiff that she would not copy them because he did not have funds to pay for the copying.  She informed him that he could copy the papers by hand.

Plaintiff attaches a number of exhibits to his complaint.  As relief, he requests monetary and punitive damages and injunctive relief in the form of giving him access to free telephone calls once a week and to have the requested copies of his legal papers made.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the

Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Claim regarding meals*

Plaintiff alleges that on August 15, 2012, after sleeping most of the day he realized that he received "neither of his evening servings of food." Upon inquiry, he was told by Defendant Langdon that trays were "put in there, you should of woke up." Plaintiff then told Defendant Langdon to get his supervisor because Plaintiff had not eaten anything. Plaintiff states that after an hour he pressed the panic button and told Defendant Langdon "to get me a tray or his supervisor." He was told by Defendant Langdon that "[his] boss said, 'your not on Rammadon schedule, so will not get a tray and you should of woke up.'" He states that "[his] resting was still set according to my fasting Rammadan schedule, so [he] was not yet readjusted to being able to wake up . . . during regular feedings." Plaintiff alleges that Defendant Langdon was aware

3

that he had been deprived of a life necessity. He asserts that he "went 24 hours without eating, in which caused [him] emotional distress, mental anguish, and pain & suffering due to extreme hungure."

The due-process rights under the Fourteenth Amendment of a pretrial detainee, as is Plaintiff, are analogous to the Eighth Amendment rights of convicted prisoners. *Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992). The Eighth Amendment protects prisoners by requiring that prison officials "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A prison's conditions of confinement are sufficiently grave if they fall beneath "the minimal civilized measure of life's necessities" as measured by a "contemporary standard of decency." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prison official inflicting such conditions acts with a sufficiently culpable state of mind if he does so with "deliberate indifference." *Wilson*, 501 U.S. at 303. However, isolated deprivations of meals to prisoners do not rise to the level of an Eighth Amendment violation where the daily meal or meals provided are sufficient to maintain normal health. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (holding that one meal per day, over fifteen days, that provided sufficient nutrition to sustain normal health did not violate the Eighth Amendment); *Waring v. Meachum*, 175 F. Supp. 2d 230, 240-41 (D. Conn. 2001) (finding no Eighth Amendment claim where inmate missed two meals and there was no indication that future meals were missed); *Cagle v. Perry*, No. 9:04–CV–1151, 2007 WL

3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (finding deprivation of two meals is "not sufficiently numerous, prolonged or severe to rise to the level of an Eighth Amendment violation"). Here, Plaintiff has alleged only that he missed two meals on one isolated occasion. Moreover, he does not even allege that he was not provided food, but rather that he slept through the meals provided. Plaintiff has failed to state a claim under the Fourteenth Amendment.

*Claim regarding access to courts*

Plaintiff's complaint regarding access to the courts stems from his handling of three *pro se* civil law suits. Plaintiff alleges that he was constantly told to have his attorney or his family to handle his legal activity and was denied free copies and free phone calls.

"The First Amendment protects an inmate's right to access to the courts, but not necessarily his access to all the legal assistance or materials he may desire." *Tinch v. Huggins*, No. 99–3436, 2000 WL 178418, at *1 (6th Cir. Feb. 8, 2000) (citing *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985)). To state a claim for denial of access to the courts, Plaintiff must demonstrate that he suffered actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). This injury requirement is not satisfied by just any type of frustrated legal claim. *Id.* A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of a specific criminal defense, non-frivolous direct appeal, habeas corpus application, or civil-rights action. *Id.*; *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999). Plaintiff does not allege that his three civil suits are habeas or civil-rights actions. Nor does he allege that he suffered any actual injury due to the conditions he describes in his complaint. With regard to his desire to use the telephone he does not allege that he is unable to contact his attorney at all or that his attorney is unable to call, mail,

5

or visit him. *See Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992) ("Although prisoners have a constitutional right of meaningful access to the courts, prisoners do not have a right to any particular means of access, including unlimited telephone use."); *Ingalls v. Florio*, 968 F. Supp. 193, 204 (D. N.J. 1997) ("[L]imited access to telephone calls, however, is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits."). Moreover, "[t]he law is well settled that inmates do not enjoy a federally protected right in free photocopying services." *Tinch*, 2000 WL 178418, at *1. Plaintiff's claims regarding access to the courts will be dismissed.

*Claim regarding retaliation*

Plaintiff alleges that on the evening of August 14, 2012, he was refused permission to go to the Ramadan service by a deputy based on an e-mail from Defendant Gail Basham stating that she was taking Plaintiff off the list. He alleges that Defendant Basham punished him with removing him from religious services he had been attending for weeks in retaliation for filing grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

The Court will allow the retaliation claim to go forward against Defendant Basham, but only in her individual capacity. For the reasons discussed below, the Court finds that the

official-capacity claims against her must be dismissed.

### *Official-capacity claim against Defendant Gail Basham and claim against GCDC*

Defendant Gail Basham is a Grayson County employee. If an action is brought against an official of a governmental entity in her official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, Plaintiff's claims against Defendant Basham in her official capacity are actually brought against the Grayson County government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is

a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

The incident alleged in the complaint appears to be a one-time occurrence. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). Plaintiff has not alleged that a policy or custom of Grayson County was the moving force behind the alleged constitutional violation. Thus, the official-capacity claim against Defendant Gail Basham as well as the claim against GCDC must be dismissed.

### III.

For the foregoing reasons, the Court will, by separate Order, dismiss Plaintiff's claims under the Fourteenth Amendment, under the First Amendment for denial of access to the courts, and against GCDC. The Court will allow Plaintiff's retaliation claim to continue against Defendant Gail Basham in her individual capacity. In so doing, the Court expresses no opinion

as to the ultimate merit of that claim.

Date: September 20, 2012

                                                        **Joseph H. McKinley, Jr., Chief Judge**
                                                        **United States District Court**

cc:     Plaintiff, *pro se*
         Defendants
         Grayson County Attorney
4414.009